**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jennifer N. Murphey, | No. CV-22-01224-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| United States of America, *et al.*, | |
| Defendants. | |

Plaintiff brought this case against the United States, several members of the federal government in their official capacities, and the Arizona Attorney General seeking declaratory and injunctive relief for constitutional and administrative infirmities with the Controlled Substances Act, the Arizona Controlled Substances Act, the 1961 Single Convention on Narcotic Drugs, and the 1971 Convention on Psychotropic Substances. Defendants have filed Motions to Dismiss (Doc. 31, "State Mot."; Doc. 40, "U.S. Mot."), to which Plaintiff has filed Responses (Doc. 45, "State Resp."; Doc. 44, "U.S. Resp.") and Defendants have filed Replies (Doc. 51, "State Reply"; Doc. 53, "U.S. Reply").[1] For the following reasons, the Court grants Defendants' Motions to Dismiss.

**I.   BACKGROUND**

Plaintiff Jennifer N. Murphey, an attorney in Oro Valley, Arizona who represents herself in this matter, alleges she currently cultivates, possesses, and uses "personal

---

[1] The issues have been fully briefed, and oral argument will not aid in the Court's decision. *See* Fed. R. Civ. P. 78(b) (permitting resolution of motions without oral hearings); LRCiv 7.2(f) (same).

amounts of psilocybin mushrooms, ayahuasca, iboga, marijuana, [and] coca leaves," "all of which are controlled and/or implicated under the [Controlled Substances Act, 21 U.S.C. § 801 *et seq.* ("CSA"), the Arizona Controlled Substances Act, A.R.S. § 36-2501 *et seq.* ("AZCSA"), the 1961 Single Convention on Narcotic Drugs, the 1971 Convention on Psychotropic Substances,] and related criminal provisions." (Doc. 22, First Am. Compl. ("FAC") ¶ 136.) In this lawsuit, she is suing the United States and its Attorney General, the Administrator of the U.S. Drug Enforcement Agency ("DEA"), the Secretary of the U.S. Department of Health and Human Services, and the Arizona Attorney General.

In the FAC, the operative pleading, Plaintiff claims the named statutes and Conventions violate (1) her due process rights under the Fifth Amendment of the U.S. Constitution, (2) her free speech rights under the First Amendment of the U.S. Constitution, (3) her First Amendment and due process rights under the Fourteenth Amendment of the U.S. Constitution (by way of 42 U.S.C. § 1983), (4) her due process rights under Article 2 of the Arizona State Constitution, (5) her free speech rights under Article 2 of the Arizona State Constitution, (6) the Commerce Clause and the Necessary and Proper Clause of the U.S. Constitution, (7) the Tenth Amendment of the U.S. Constitution, and (8) the Administrative Procedure Act, 5 U.S.C. § 706 ("APA"). Defendants have now moved to dismiss the FAC.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) challenge may be either facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). When, as here, a defendant argues that the claims in the complaint, even if true, are insufficient to establish subject matter jurisdiction, the challenge is a facial one. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge to subject matter jurisdiction under Rule 12(b)(1), courts must accept all material, non-conclusory

allegations in the complaint as true and construe the complaint in favor of the plaintiff. *White*, 227 F.3d at 1242; *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

When evaluating a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing the elements of Article III standing. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Because federal courts are courts of limited jurisdiction, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

### B.   Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal under Rule 12(b)(6) for failure to state a claim can be based on either: (1) the lack of a cognizable legal theory; or (2) the absence of sufficient factual allegations to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). When analyzing a complaint for failure to state a claim, the well-pled factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

"While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up and citations omitted). Legal conclusions couched as factual allegations are not entitled to the assumption of truth

and therefore are insufficient to defeat a motion to dismiss for failure to state a claim. *Iqbal*, 556 U.S. at 679–80. However, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

## III. ANALYSIS

### A. Standing

The United States contends that Plaintiff lacks standing to bring her claims in this lawsuit. Under Article III of the Constitution, a plaintiff must have "the core component of standing" to bring a justiciable lawsuit into federal court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy Article III's standing requirements, the plaintiff must show that she suffered a "concrete and particularized" injury that is "fairly traceable to the challenged action of the defendant," and that a favorable decision would likely redress the injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). In her complaint, the plaintiff must "alleg[e] specific facts sufficient" to establish standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821 (9th Cir. 2002). If the plaintiff fails to allege such facts, the Court should dismiss the complaint. *See, e.g., Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1123 (9th Cir. 2010). Here, the United States focuses on the first prong of the Article III inquiry, arguing that Plaintiff has not shown that she faces a genuine threat of enforcement sufficient to constitute an injury-in-fact. (U.S. Mot. at 4.)

To satisfy the "irreducible constitutional minimum of standing," an injury must not only be "concrete and particularized," but also "actual or imminent." *Lujan*, 504 U.S. at 560. Thus, an injury that is only *possible* is not enough—there must be a "substantial risk" that the harm will occur. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). That the plaintiff need demonstrate a "substantial risk" of injury is particularly relevant where, as here, the plaintiff seeks pre-enforcement review such that she alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest

but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979).

### 1. Challenge to CSA, AZCSA, and Related Criminal Statutes

The United States contests the existence of a credible threat of prosecution. It is well settled that a plaintiff need not "first expose [herself] to actual arrest or prosecution to be entitled to challenge [the] statute that [she] claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). Instead, the Ninth Circuit has adopted a three-factor test to determine whether a plaintiff faces a genuine threat of enforcement. *See Arizona v. Yellen*, 34 F.4th 841, 849 (9th Cir. 2022).

To determine whether a claimed threat of enforcement is genuine, courts consider whether: (1) the plaintiff has "articulated a concrete plan to violate the law in question," (2) "prosecuting authorities have communicated a specific warning or threat to initiate proceedings," and (3) there is a "history of past prosecution or enforcement under the challenged statute." *Id.* at 850. The United States argues that Plaintiff's FAC "satisfies none of the three factors." (U.S. Mot. at 6.)

Regarding the first factor, a plaintiff's plan to violate the law need not be "cast in stone," but "[a] general intent to violate a statute" is not enough to constitute "an articulated, concrete plan." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc). The United States suggests that Plaintiff has merely asserted a general intent to violate the CSA, (U.S. Mot. at 6), but Plaintiff has done more. In the FAC, Plaintiff states that she currently cultivates, possesses, and/or uses "psilocybin mushrooms, ayahuasca, iboga, marijuana, [and] coca leaves" in her home and that she intends to continue doing so. (FAC ¶ 136.) Each of these substances is currently controlled under one of the five established schedules of the CSA. *See* 21 U.S.C. § 812. Plaintiff has thus admitted to engaging in conduct proscribed by the CSA.

Where a plaintiff is "currently violating and plan[s] to continue to violate the CSA by" consuming a controlled substance, that plaintiff satisfies the concrete plan factor. *See Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 836 (9th Cir. 2012).

Plaintiff need "not state exactly how, where, and in what quantities [she] intend[s] to consume" controlled substances to have sufficiently alleged a concrete plan. *Id.* at 835. Consequently, Plaintiff satisfies the first factor.[2]

Under the second factor, "the threat of enforcement must at least be 'credible,' not simply 'imaginary or speculative.'" *Thomas*, 220 F.3d at 1140 (quoting *Babbitt*, 442 U.S. at 298). The United States argues that because Plaintiff has not directly received a specific warning or threat to initiate proceedings against her, the Court should reject standing. (U.S. Mot. at 8.) However, the second factor requires no such direct threat of prosecution. *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013). Indeed, "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief." *Blanchette v. Conn. Gen. Ins. Corps.*, 419 U.S. 102, 143 (1974). It is enough for the plaintiff to "intend[] to engage in a course of conduct arguably affected with a constitutional interest and that there is a credible threat that the challenged provision will be invoked against the plaintiff." *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1155 (9th Cir. 2000) (internal quotations and citation omitted).

Here, Plaintiff faces a credible threat that the criminal provisions of the CSA or its state-based counterpart will be enforced against her. Courts routinely find standing where enforcement authorities have failed to disavow enforcement of the law in question. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1988); *Yellen*, 34 F.4th at 850 ("That the federal government has not disavowed enforcement of the [provision] is evidence of an intent to enforce it."). Plaintiff alleges that she has spoken to state officials and "neither the State nor any of its municipalities has agreed to set forth any action that would stop or minimize prosecution for certain controlled substances." (FAC ¶ 138.) The state government declined to disavow enforcement of the AZCSA then, and the United States has declined to disavow enforcement of the CSA now. (U.S. Mot. at 8.) Plaintiff's

---

[2] The United States also argues that Plaintiff's subjective fear of prosecution is insufficient to confer Article III standing, (U.S. Mot. at 6–8), but the Court need not reach that argument because the Plaintiff's admitted use of controlled substances is itself sufficient.

- 6 -

"fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative." *Babbitt*, 442 U.S. at 302.

The United States relies on *Thomas v. Anchorage Equal Rights Commission* for the proposition that "neither the mere existence of a proscriptive statute nor a generalized threat is sufficient." *Thomas*, 220 F.3d at 1140. But *Thomas* is distinguishable. The plaintiffs in *Thomas* were landlords who pledged to flout anti-discrimination laws by refusing to rent to unmarried couples. *Id.* at 1137. Those couples, in the plaintiffs' view, sought to commit the sin of cohabitation by living together. *Id.* The landlords in that case brought a pre-enforcement challenge to the anti-discrimination laws based on an intent to violate the laws, but the court found any future violation "beyond speculation" due to the landlords' "expressed 'intent' to violate the law on some uncertain day in the future—if and when an unmarried couple attempts to lease one of their rental properties." *Id.* at 1140. The court rejected standing because "[t]he asserted threat [was] wholly contingent upon the occurrence of unforeseeable events," such as whether an unmarried couple would seek to lease the landlords' property or whether an unmarried couple, having been denied tenancy, would complain to enforcement agencies. *Id.* at 1141.

Unlike *Thomas*, no contingent set of circumstances is required to trace Plaintiff's plan of using controlled substances to a possible future criminal prosecution. Plaintiff stated that she has violated and will continue to violate the CSA; no attenuated chain of events sits between that concrete plan and a future criminal prosecution. In other words, Plaintiff's theory of standing does not rely "on a highly attenuated chain of possibilities." *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).[3] Therefore, she satisfies the second factor.

Regarding the third factor, courts consider "the history of enforcement under the statute." *Thomas*, 220 F.3d at 1140. The United States argues that Plaintiff cannot satisfy

---

[3] In her Response, Plaintiff argues that she faces a credible threat of enforcement based on "a history of past enforcement against parties similarly situated to the plaintiff." (U.S. Resp. at 3 (quoting *Lopez v. Candaele*, 622 F.3d 1112, 1122 (9th Cir. 2010)).) In its Reply, the United States correctly points out that the Ninth Circuit withdrew and superseded that opinion with an amended opinion that rejected standing. (U.S. Reply at 2 (citing *Lopez v. Candaele*, 630 F.3d 775 (9th Cir. 2010)).) Although the *Lopez* court did

- 7 -

this factor because she "has evidently not been arrested, charged, or imprisoned because of her narcotics usage." (U.S. Mot. at 8.) In making this argument, the United States, without citing any authority, impliedly qualifies the third factor by requiring a history of enforcement under the statute *against the plaintiff in particular*. But no such qualification exists in the Ninth Circuit, and courts look to all instances of enforcement of the statute, even against others. *See Thomas*, 220 F.3d at 1140; *American-Arab Anti-Discrimination Comm. v. Thornburgh*, 970 F.2d 501, 508 (9th Cir. 1991).

The United States does not argue that it has no history of enforcing the CSA, nor could it. Undisputedly, thousands of prosecutions have been brought under the CSA, as Plaintiff alleges in her Complaint. (FAC ¶ 137.) Thus, Plaintiff satisfies the third factor. Because all three factors weigh in favor of Plaintiff facing a credible threat of enforcement for her past and future use of proscribed controlled substances, she has standing to challenge the CSA, AZCSA, and related criminal provisions.[4]

## 2. Challenge to International Conventions

Just because a plaintiff has standing to bring some of her claims does not relieve her of demonstrating standing for "each claim [s]he seeks to press and for each form of relief that is sought." *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotations and citation omitted). Because Plaintiff also challenges the constitutionality of

---

indeed reject the plaintiff's argument in the amended opinion about a history of past enforcement against similarly situated parties, the court rejected it based upon factual differences between the plaintiff and the parties allegedly similar to him. *Lopez*, 630 F.3d at 791. The court noted that there was no indication that the defendant even interpreted the plaintiff's conduct as having violated its policy such that it would enforce the policy against him, distinguishing the plaintiff from the allegedly similar individuals. *See id* at 790–91. The court did not, as the United States argues, reject the underlying legal premise. *See id.* In any event, though it may be sufficient to confer standing, a history of past enforcement against similarly situated individuals is not necessary. *See Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094–95 (9th Cir. 2003). Therefore, the Court's conclusion is supported by the case law notwithstanding Plaintiff's erroneous citation.

[4] The United States also argues that Plaintiff lacks standing to challenge the entirety of the CSA. (U.S. Mot. at 9.) But the United States's cited cases merely stand for the proposition that a plaintiff must have standing for each cause of action and form of relief sought. *See Town of Chester, N.Y. v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017); *Lewis v. Casey*, 518 U.S. 343, 358 (1996). Plaintiff seeks declaratory and injunctive relief prohibiting the enforcement of the CSA and AZCSA to the extent they prevent her from producing, possessing, or using certain controlled substances. (FAC at 55–56.) To those ends, Plaintiff has standing. *See Gonzales v. Raich*, 545 U.S. 1, 7 (2005).

1    the 1961 and 1971 Conventions, she must independently have standing for those claims.
2    She does not.

3    When it comes to international treaties, there is a "distinction between treaties that
4    automatically have effect as domestic law, and those that—while they constitute
5    international law commitments—do not by themselves function as binding federal law."
6    *Medellín v. Texas*, 552 U.S. 491, 504 (2008). This distinction lays the foundation for the
7    doctrine of self-execution, whereby "a self-executing treaty is one that is judicially
8    enforceable upon ratification," whereas "a non-self-executing treaty requires congressional
9    action via implementing legislation . . . ." *Republic of Marshall Islands v. United States*,
10   865 F.3d 1187, 1192 (9th Cir. 2017). In other words, "[n]ot all treaties are created equal in
11   terms of enforceability." *Id.* at 1190.

12   The United States argues that the 1961 and 1971 Conventions are not self-executing
13   and, thus, unenforceable in this Court. (U.S. Mot. at 10.) Plaintiff argues, in response, that
14   the Conventions carry "the force of binding domestic law as they were implemented by the
15   CSA." (U.S. Resp. at 3.) Because neither Convention "serves as a 'directive to domestic
16   courts,'" the Court agrees with the United States. *Marshall Islands*, 865 F.3d at 1193
17   (quoting *Medellín*, 552 U.S. at 508).

18   "The interpretation of a treaty, like the interpretation of a statute, begins with its
19   text." *Medellín*, 552 U.S. at 506. Here, Plaintiff points to no text in either the 1961 or 1971
20   Convention that "explicitly call[s] for direct judicial enforcement." *Marshall Islands*, 865
21   F.3d at 1195. Plaintiff also fails to identify a provision in either Convention that addresses
22   the manner in which the United States is obligated to enforce criminal prohibitions against
23   the cultivation or use of controlled substances. *See id.* Nor could she; the 1961 Convention,
24   for example, merely obliges the United States to "take such legislative and administrative
25   measures as may be necessary" to "give effect to and carry out the provisions." Single
26   Convention on Narcotic Drugs, 1961 art. 4, Mar. 30, 1961, 18 U.S.T. 1407, 520 U.N.T.S.
27   204. Plaintiff fares no better under the 1971 Convention by failing to pinpoint any evidence

that "domestic enforcement was explicitly or implicitly contemplated . . . in federal court." *Marshall Islands*, 865 F.3d at 1199.

Courts are "to give direct legal effect to treaties only insofar as they are self-executing and therefore operate as the law of the land." *Hopson v. Kreps*, 622 F.2d 1375, 1380 (9th Cir. 1980). Because the 1961 and 1971 Conventions are not self-executing, they are not the law of the land. Thus, they do not serve to impose legal obligations upon Plaintiff that are enforceable in this Court. The result is that Plaintiff has no standing to challenge the Conventions, and the Court must dismiss Plaintiff's related claims.

### B.     Due Process

Plaintiff alleges that Defendants have violated her substantive and procedural due process rights as guaranteed by the Fifth and Fourteenth Amendments of the U.S. Constitution and Article 2, § 4 of the Arizona State Constitution. (FAC ¶¶ 148–150, 154-159.) The United States and Arizona Attorney General raise largely the same arguments supporting their Motions to Dismiss. First, they argue that Plaintiff's asserted liberty interests are neither sufficiently articulated nor so deeply rooted in history and tradition as to constitute fundamental liberty interests. But, both parties say, even if Plaintiff was able to show as much, her substantive due process claims would still be foreclosed by the Ninth Circuit's decision in *Raich v. Gonzales*, 500 F.3d 850 (9th Cir. 2007). Then, Defendants argue, because Plaintiff failed to establish either a protected liberty or property interest, she cannot state a claim for a procedural due process violation either.

Under the Fifth and Fourteenth Amendments, the government may not "infringe certain 'fundamental' liberty interests . . . unless the infringement is narrowly tailored to serve a compelling state interest." *Reno v. Flores*, 507 U.S. 292, 302 (1993). To determine whether an asserted liberty interest is "fundamental," courts employ a two-step analysis that asks whether: 1) the asserted liberty interest is "objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty," and (2) the plaintiff provides a "careful description" of the asserted fundamental liberty interest. *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997).

Though enumerated as the second step of the analysis, courts sometimes "must begin with a careful description of the asserted right, for the doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Flores*, 507 U.S. at 302. Indeed, the Supreme Court "has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). For that reason, the Court must first "carefully formulat[e] the interest at stake." *Glucksberg*, 521 U.S. at 722.

As Defendants point out, Plaintiff asserts a lengthy list of fundamental liberty interests, ranging from her "interest in exercising [her] personal and mental autonomy by determining and choosing what is best for [her] own mind, body and spirit" to her "interest in informed consent with regard to treatment" and her "interest in meaningful choice with regard to [her] own healthcare and wellbeing." (FAC ¶¶ 132–34.) Most of those interests are not "carefully stated and narrowly identified" because they omit their "centerpiece": that Plaintiff seeks the right to use certain controlled substances. *See Raich*, 500 F.3d at 864.

However, the Court can discern one asserted liberty interest in the FAC sufficiently stated to satisfy the requisite level of specificity. *See id.* n.12 (recognizing the court's discretion to construe the asserted right as necessary). In her Complaint, Plaintiff specifically asserts the right to "cultivat[e], possess[], and/or us[e] personal amounts of psilocybin mushrooms, ayahuasca, iboga, marijuana, coca leaves, . . . and any other substance [she] choose[s], in [her] own home, to the extent [she] feel[s] is necessary for [her] own well-being, consciousness, and mental and physical health." (FAC ¶ 136.) Though Plaintiff's asserted right is capacious and rather broad, the Court accepts this articulation as the "careful description" required by *Glucksberg*.[5]

With this as Plaintiff's asserted right, the Court moves on to analyze whether the right is "objectively, deeply rooted in this Nation's history and tradition." *Glucksberg*, 521

---

[5] The Court notes that, under any formulation of an asserted liberty interest that includes the use of a controlled substance, the analysis under *Raich* comes out the same.

- 11 -

U.S. at 720–21. That analysis need not be conducted from scratch, however, because *Raich* is controlling law that binds the Court here.

In *Raich*, the plaintiff was a California resident who consumed marijuana to treat a multitude of maladies. *Raich*, 500 F.3d at 855. She had "been diagnosed with more than ten serious medical conditions, including an inoperable brain tumor, a seizure disorder, life-threatening weight loss, nausea, and several chronic pain disorders." *Id.* After attempts by her doctor to explore "virtually every legal treatment alternative," the plaintiff resorted to consumption of marijuana as her sole effective remedy. *Id.* In a pre-enforcement challenge, as in the present case, the plaintiff challenged the constitutionality of the CSA on multiple grounds, one of which being a substantive due process challenge under the Fifth Amendment. *Id.* at 856.

The court rejected the plaintiff's asserted "right to make a life-shaping decision on a physician's advice to use medical marijuana to preserve bodily integrity, avoid intolerable pain, and preserve life, when all other prescribed medications and remedies have failed." *Id.* at 864–66. Despite acknowledging "that medical and conventional wisdom that recognizes the use of marijuana for medical purposes [was] gaining traction," the court concluded that "the use of medical marijuana ha[d] not obtained the degree of recognition" necessary to protect the asserted right as fundamentally protected by the Constitution. *Id.* at 865. Rather, the issue "remain[ed] in the arena of public debate and legislative action." *Id.* at 866 (internal quotations and citation omitted).

If the right asserted in *Raich* failed, so too must the right asserted here. Plaintiff asserts that she has the fundamental right to consume psilocybin mushrooms, ayahuasca, iboga, marijuana, coca leaves, and more, but that conduct falls well outside the bounds of the conduct in *Raich*. Marijuana is but one of the substances Plaintiff wishes to consume, and if the narrower right to use medical marijuana as a last resort is not "implicit in the concept of ordered liberty," then neither is the broader right to use a myriad of controlled substances as one feels it is "necessary." *See id.* Though the *Raich* court prophesized that "the wisdom of a future day" may soon bring the use of certain controlled substances within

the realm of "fundamental" rights, this Court is not permitted to make that call. *Id.* The Court must abide by the Ninth Circuit precedent in *Raich*, which has been reaffirmed on multiple occasions. *See Wilson v. Lynch*, 835 F.3d 1083, 1097 n.9 (9th Cir. 2016); *United States v. Langley*, 17 F.4th 1273, 1275 (9th Cir. 2021).

Plaintiff cites the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215 (2022), to highlight the difference between conduct that "involve[]s another person" and conduct that "involves no other." (U.S. Resp. at 10.) Because Plaintiff asserts a right that "involves intimacy with [her] own mind, body, and spirit," she purports to have a stronger claim than if her asserted right involved another. (U.S. Resp. at 10.) First, this argument has no effect on the binding nature of *Raich*. And second, in *Dobbs*, the Court did not reject the right to abortion simply because it impacted another human. Among other reasons, the Court rejected the right to abortion because it "involved the critical moral question" of ending a "potential life." *Dobbs*, 597 U.S. at 257. That question, the Court said, "is fundamentally different" from previously considered privacy interests. *Id.* at 231. Plaintiff admits in her own Response that a number of other rights are fundamental even when they implicate more than the individual claiming the right. (U.S. Resp. at 10 ("[M]ost of the recognized fundamental rights described above involve another person.").) Thus, a crisp line cannot be drawn to protect conduct that one keeps to herself while not protecting conduct affecting others. In any event, *Dobbs* turns farther afield from the direction Plaintiff would have the Court go because the Supreme Court explicitly suggested that illicit drug use "has [no] claim to being deeply rooted in history." *Dobbs*, 597 U.S. at 257. Though that statement was dicta, it further supports this Court's decision not to "break new ground in this field." *Flores*, 507 U.S. at 302. For the reasons above, the Court must reject Plaintiff's substantive due process argument and dismiss those claims.

In addition to a substantive due process claim, Plaintiff brings a procedural due process claim. It is not entirely clear what the precise basis of Plaintiff's procedural due process claim is, but the Court understands her to advance the argument that the very existence of the CSA "do[es] not satisfy the procedural due process guarantees of the Fifth

Amendment." (U.S. Resp. at 12–13.) When "action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings." *Gallo v. U.S. Dist. Court For Dist. of Ariz.*, 349 F.3d 1169, 1181 (9th Cir. 2003) (citing *Texaco v. Short*, 454 U.S. 516, 536 (1982)). Plaintiff makes no allegations that Congress failed to follow proper legislative procedures in enacting the CSA. Thus, the Court also dismisses her procedural due process claim.

## C. Freedom of Speech

Plaintiff also alleges that Defendants have violated her freedom of speech in contravention of the First Amendment of the U.S. Constitution and Article 2, § 6 of the Arizona State Constitution. (FAC ¶¶ 151–156.) The United States and Arizona Attorney General argue that the challenged CSA provisions "regulate only conduct, not speech," placing them outside the protections of the First Amendment. (U.S. Mot. at 16–17; State Mot. at 3–4.) Plaintiff resists this conclusion by arguing "that freedom of thought, which naturally includes belief, intention and motivation, are fundamental First Amendment rights" that the CSA unconstitutionally infringes upon. (U.S. Resp. at 13.)

The First Amendment guarantees the freedom of expression against intrusion by the government.[6] This protection serves "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. United States*, 354 U.S. 476, 484 (1957). As fundamental as that protection may be, "it is apparent that the unconditional phrasing of the First Amendment was not intended to protect every utterance." *Id.* at 483. And though the outer bounds of First Amendment protection extend to situations where an individual chooses to articulate her views through conduct rather than printed or spoken words, it does not reach "an apparently limitless variety of conduct . . . whenever the person engaging in the conduct intends thereby to express an idea." *Spence v. Washington*, 418 U.S. 405, 409 (1974).

---

[6] Though "the Arizona Constitution provides broader protections for free speech than the First Amendment," the Court analyzes the federal and state free speech claims in unison. *Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 902 (Ariz. 2019). In her briefing, Plaintiff does not dispute Defendants' use of federal case law, and she relies exclusively on federal case law herself. The Court thus concludes that Plaintiff acquiesces to combining the analyses.

The Ninth Circuit "has eschewed a rule that all conduct is presumptively expressive, [and] individuals claiming the protection of the First Amendment must carry the burden of demonstrating that their nonverbal conduct meets the applicable standard." *Knox v. Brnovich*, 907 F.3d 1167, 1181 (9th Cir. 2018) (internal quotations and citation omitted). That applicable standard is set forth in *Spence*, where the Supreme Court established that "particular conduct possesses sufficient communicative elements to bring the First Amendment into play" when the plaintiff demonstrates that "[a]n intent to convey a particularized message was present, and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence*, 418 U.S. at 410–11.

As an initial matter, the Court notes that pure speech is not implicated here. Though Plaintiff cites multiple cases that discuss the sanctity of "an autonomy of self" and the "freedom of thought and belief," (U.S. Resp. at 13–14), none of those cases support the proposition that ingestion of a controlled substance is speech. Instead, the Court must consider whether ingestion of a controlled substance constitutes expressive conduct under *Spence*.

Plaintiff devotes considerable briefing to critiques of the government's methods for an alleged "overreach into the private realms of our minds," but she fails to identify any nonverbal conduct of hers that is intended to convey a particularized message likely to be understood by others. *See Spence*, 418 U.S. at 410–11. She takes issue with "Defendants' definition of 'drug abuse,' the scheduling factors, [and] inspection of personal anecdotes to presume thoughts, intentions, beliefs, . . . and much more." (U.S. Resp. at 14.) But before considering "whether the State's regulation is related to the suppression of free expression," the Court must first assure itself that Plaintiff is "permitt[ed] to invoke the First Amendment" under *Spence*. *Texas v. Johnson*, 491 U.S. 397, 403 (1989). Here, Plaintiff has failed to carry her burden of gaining license to invoke the First Amendment because she failed to explain any particularized message that she intends to convey by using controlled substances. *See Knox*, 907 F.3d at 1181.

There do exist scenarios where an individual's use of a controlled substance may constitute expressive conduct. Plaintiff identifies one such scenario discussed by Justice Alito in his *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), concurrence. Justice Alito, referencing *Employment Division, Department of Human Resources of Oregon. v. Smith*, 494 U.S. 872 (1990), noted that "members of the Native American Church who ingest peyote as part of a religious ceremony are surely engaging in expressive conduct that falls within the scope of the Free Speech Clause." *Fulton*, 593 U.S. at 561 (Alito, J., concurring). But it does not automatically follow that any action taken with respect to controlled substance use is expressive conduct. *See Johnson*, 491 U.S. at 405. Courts must place the action into context for purposes of "characterizing such action for First Amendment purposes." *Id.* Placed in context, peyote use during a religious ceremony, as in *Smith*, is distinct from Plaintiff's generalized intention to use a number of controlled substances as she sees fit.

While the CSA prohibits certain conduct associated with controlled substances, Plaintiff's freedom of speech remains intact. Though she cannot possess controlled substances, she may still advocate for policy changes allowing for their possession. *See Speiser v. Randall*, 357 U.S. 513, 535 (1958). Though she cannot distribute controlled substances, she retains "the right to receive information and ideas" about them. *See Stanley v. Georgia*, 394 U.S. 557, 564 (1969). And though she cannot manufacture controlled substances, the CSA does not purport to allow the government to "probe [her] reading habits, political philosophy, beliefs, and attitudes on social and economic issues." *See Schneider v. Smith*, 390 U.S. 17, 24 (1968). Because Plaintiff has failed to carry her burden of showing how the CSA infringes on her ability to convey any particularized message, the Court dismisses her freedom of speech claims.

**D.    Commerce Clause, Necessary and Proper Clause, and the Tenth Amendment**

Plaintiff also claims Congress exceeded its powers under the Commerce Clause and violated the Necessary and Proper Clause in enacting the CSA and, as a result, also violated

the Tenth Amendment provision that powers not delegated by the Constitution to the United States are reserved to the states. (FAC ¶¶ 163–68.) The provision of the Constitution providing that Congress has the power to "regulate commerce . . . among the several states" is referred to as the Commerce Clause. U.S. Const. art. I, § 8, cl. 3. Congress's legislative power is limited to making laws that are "necessary and proper" for carrying out its constitutional power. U.S. Const. art. I, § 8, cl. 18.

In *Raich*, the Supreme Court held that, in enacting the CSA, Congress violated neither the Commerce Clause nor the Necessary and Proper Clause, but rather it was a "valid exercise of federal power." 545 U.S. at 8. Plaintiff argues that, in the 18 years since *Raich* was decided, "substantial new evidence" by way of "vast changes in state marijuana legislation" is available that controverts the Supreme Court's decision in *Raich*, including "reduction of federal marijuana trafficking arrests." (U.S. Resp. at 18–19.) But the Supreme Court found that Congress "had a rational basis for concluding that leaving home-consumed marijuana outside federal control would [affect] price and market conditions," thereby exerting "a substantial effect on interstate commerce." 545 U.S. at 17–19. While it may be relevant to current federal policy regarding marijuana regulation, a meaningful review of the "new evidence" cited by Plaintiff does not alter the Supreme Court's interstate commerce analysis in *Raich* with regard to Congress's enactment of the CSA. *See id.* That analysis applies with equal force now. Thus, "when it enacted comprehensive legislation to regulate the interstate market in a fungible commodity, Congress was acting well within its authority to 'make all Laws which shall be necessary and proper' to 'regulate Commerce. . . among the several States.'" *Id.* at 22 (quoting U.S. Const. art. I, § 8). "That the regulation ensnares some purely intrastate activity is of no moment." *Id.*

Where, as here, a plaintiff claims a federal intrusion into state sovereignty, the Tenth Amendment inquiry mirrors the inquiry under the Commerce Clause. *See New York v. United States*, 505 US. 144, 156 (1992). "If a power is delegated to Congress in the Constitution, the Tenth Amendment expressly disclaims any reservation of that power to

the States." *Id.* Accordingly, because Congress acted within its power in enacting the CSA, Plaintiff's Tenth Amendment claim also fails.

### E.  Administrative Procedure Act

Finally, Plaintiff brings a claim under the APA, 5 U.S.C. § 706, to challenge final agency actions of the DEA in implementing the CSA. (FAC ¶¶ 169–71.) The APA provides that a district court may review agency action. 5 U.S.C. § 706. If the court finds that an agency action was "arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence," the court may reverse or set aside the decision. 5 U.S.C. § 706(2)(a), (e).

In her brief, Plaintiff states the basis of her APA claim is the DEA's "pattern of unconstitutional practices and policies that led to the creation of and continuous changes to the schedules in the regulations." (U.S. Resp. at 7.) Plaintiff contends she is not challenging any "final determinations, findings, and conclusions" subject to review only by a court of appeals under 21 U.S.C. § 877. In particular, Plaintiff states she is not challenging the DEA's final determinations by way of the scheduling of particular substances (U.S. Resp. at 5–6), even if she goes to great lengths in the FAC to allege the improper scheduling of substances such as Daridorexant and tryptamines (FAC ¶¶ 33–53).

But if Plaintiff is not challenging the scheduling of particular substances, it is unclear precisely what final agency actions she is challenging. And while she cites *John Doe, Inc. v. Drug Enforcement Administration*, 484 F.3d 561, 568 (D.C. Cir. 2007), for the proposition that district courts have reviewed DEA activity as a "final agency action" that was outside § 877's "final determinations, findings, and conclusions" provision (U.S. Resp. at 6), that court could actually find no basis in this context to conclude a plaintiff could challenge a "final agency action" subject to district court review outside of the "final determinations findings, and conclusions" subject only to court of appeals review under 21 U.S.C. § 877. *John Doe, Inc.*, 484 F.3d at 568–69. Moreover, unlike in the present case, the challenged final agency action in that case was clear: the DEA's denial of a permit to import for bioequivalency testing a generic version of a drug approved by the Food and

Drug Administration. *Id.* at 563. Here, Plaintiff does not identify a final agency action of the DEA with any specificity as a basis of her APA claim.

A claim based on each of the other possibilities the Court can glean from the FAC fails. To the extent Plaintiff is challenging the DEA's implementation of the CSA regulations as a whole—that is, to the extent she "seeks a sweeping injunction against the entire implementing framework" of the CSA, as characterized by the United States (U.S. Reply at 4)—the DEA promulgated the regulations in 1997, and the statute of limitations period for such a claim would have run in 2003, making her current claim untimely.

In characterizing her claim as one premised in "unconstitutional practices and policies" of the DEA (U.S. Resp. at 7), Plaintiff argues without citation to legal authority that her challenge is "not within the competence of Defendants to decide" (U.S. Resp. at 5). But her challenge to the constitutionality of the regulations as applied to her activities in producing, possessing or consuming controlled substances mirrors her claims that the CSA itself is unconstitutional, and those claims have no merit, as the Court discussed *supra*. For all of these reasons, the Court will dismiss Plaintiff's APA claim.

Because the Court finds that Plaintiff cannot cure the defects in the FAC by further amendment, the Court will dismiss the FAC without leave to amend. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000).

**IT IS THEREFORE ORDERED** granting Defendants' Motions to Dismiss (Doc. 31, 40). The Court dismisses the First Amended Complaint without leave to amend.

**IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly and close this case.

Dated this 28th day of March, 2024.

Honorable John J. Tuchi
United States District Judge